FILED

2015 Sep-18  PM 01:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| CINDY STEELE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )    Case No.:  5:14-cv-01038-SGC |
| SOCIAL SECURITY ADMINISTRATION, | ) |
| Commissioner, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

The plaintiff, Cindy Steele, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Steele timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3).  For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. Procedural History

Steele has a high school education and has previously worked as a nurse aide, cashier, short order cook, truck driver, and garbage truck driver.  (Tr. at 13-37, 241-45, 246, 256).  In her applications for DIB and SSI, Steele alleged she became disabled on July 19, 2010, as a result of fibromyalgia, degenerative disc disease, diabetes, rheumatoid arthritis, chronic obstructive pulmonary disease ("COPD"), and pancreatitis.  (*Id.* at 215, 217, 255).  After her claims were denied, Steele requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 142-61, 175).  Following a hearing, the ALJ denied Steele's claims.  (*Id.* at 86-96).  Steele was 51 years

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 15).

old when the ALJ issued his decision.  (*Id.* at 96, 215).  After the Appeals Council declined to review the ALJ's decision (*id.* at 2-4), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).  Thereafter, Steele initiated this action.  (Doc. 1).

## II. <u>Statutory and Regulatory Framework</u>

To establish her eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also id.* at § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  Furthermore, a DIB claimant must show she was disabled between her alleged initial onset date and her date last insured.  *Mason v. Comm'r of Soc. Sec.*, 430 Fed. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).  The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."  *Id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity."  *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 Fed. App'x 862, 863 (11th Cir. 2012).  If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i) and (b), 416.920(a)(4)(i) and (b).  At the first step, the ALJ determined Steele met the Social Security Administration's insured status requirements

through September 30, 2015, and had not engaged in substantial gainful activity since her alleged onset date of July 19, 2010.  (Tr. at 88).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."  *Id.* at §§ 404.908, 416.908; *see also* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. §§ 404.1520(c), 416.920(c).[2]  "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a).  A claimant may be found disabled based on a combination of impairments, even though none of the individual impairments alone is disabling.  20 C.F.R. §§ 404.1523, 416.923.  The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity.  *Id.* at

---

[2] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeking, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b), 416.921(b).

§§ 404.1512(a) and (c), 416.912(a) and (c).  If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled.  *Id.* at §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c).  At the second step, the ALJ determined Steele has the following severe impairments: diabetes mellitus, a history of COPD, fibromyalgia, major depressive disorder, degenerative disc disease of the cervical and lumbar spine, coronary artery disease status post coronary angioplasty and stent placement, and arthritic changes to the first carpal metacarpal joint space of the hands bilaterally.  (Tr. at 89).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also id.* at §§ 404.1525-26, 416.925-26.  The claimant bears the burden of proving her impairment meets or equals one of the Listings.  *Reynolds-Buckley*, 457 Fed. App'x at 863.  If the claimant's impairment meets or equals one of the Listings, the Commissioner will find the claimant is disabled.  20 C.F.R §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d).  At the third step, the ALJ determined Steele does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings.  (Tr. at 89).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  *Id.* at §§ 404.1520(e), 416.920(e); *see also id.* at §§ 404.1545, 416.945.  A claimant's RFC is the most she can do despite her impairments.  *See id.* §§ 404.1545(a)(1), 416.945(a)(1).  At the fourth step, the Commissioner will compare his assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id.* at §§ 404.1520(a)(4)(iv) and (e), 404.1560(b), 416.920(a)(4)(iv) and (e),

4

416.960(b).  "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  *Id.* §§ 404.1560(b)(1), 416.960(b)(1).  The claimant bears the burden of proving her impairment prevents her from performing her past relevant work.  *Reynolds-Buckley*, 457 Fed. App'x at 863.  If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(3), 416.920(a)(4)(iv), 416.960(b)(3).  Before proceeding to the fourth step, the ALJ determined Steele has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[3] except she can occasionally bend, balance, crawl, stoop, kneel, and crouch; should never climb ladders, ropes, or scaffolds, work around unprotected heights, dangerous machinery, uneven surfaces, or large bodies of water, or in an environment requiring commercial driving; and should avoid concentrated exposure to extreme cold, heat, wetness, fumes, odors, dust, and gases.  (Tr. at 90).  The ALJ further found Steele can make simple work-related decisions, handle few workplace changes, and tolerate occasional interaction with others, although not in close proximity.  (*Id.*).  At the fourth step, the ALJ determined Steele is unable to perform her past relevant work.  (*Id.* at 94).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 404.1560(c)(1), 416.920(a)(4)(v) and (g)(1), 416.960(c)(1).  If the claimant is capable of performing other work, the

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b) and 416.967(b).

Commissioner will find the claimant is not disabled.  *Id.*  §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1).  If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled.  *Id.*  At the fifth step, considering Steele's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Steele can perform, such as those of hotel housekeeper, fabric puller, and laundry folder.  (Tr. at 95).  Therefore, the ALJ concluded Steele is not disabled.  (*Id.* at 96).

**III. <u>Standard of Review</u>**

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*  A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

On appeal, Steele raises two issues. First, she argues the ALJ and the Appeals Council erred in failing to review her fibromyalgia under SSR 12-2p, a new social security ruling issued between the date of the hearing and the date on which the ALJ issued his decision. (Doc. 12 at 12-19). Second, she argues the ALJ's assessment of her RFC is not supported by substantial evidence. (*Id.* at 19-21).

### A. SSR 12-2p

SSR 12-2p became effective on July 25, 2012, after the hearing before the ALJ but before the ALJ issued his decision. That social security ruling provides guidance for developing evidence to establish a claimant has a medically determinable impairment of fibromyalgia and evaluating fibromyalgia in the context of a disability claim. *See* SSR 12-2p. It clarifies that because fibromyalgia cannot meet a Listing (because it is not a listed impairment), at step three of the sequential evaluation, the ALJ determines whether it medically equals a Listing, alone or in combination with other severe impairments. *See id.* Steele claims the ALJ and the Appeals Council failed to analyze whether her fibromyalgia, alone or in combination with her other severe impairments, meets or equals one of the Listings in contravention of SSR 12-2p. (Doc. 12 at 12-14). This allegation is an assumption based on the lack of reference to SSR 12-2p in the ALJ's decision and the explicit discussion in that decision of whether several of Steele's other

severe impairments met or equaled a Listing.   However, "it is not required that the [ALJ] mechanically recite the evidence leading to [his] determination." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).  *See also Johnson v. Barnhart*, 148 Fed. App'x 838, 842 (11th Cir. 2005); *Keane v. Comm'r of Soc. Sec.*, 205 Fed. App'x 748, 750 (11th Cir. 2006); *Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 Fed. App'x 748, 750 (11th Cir. 2011); *Kalishek v. Comm'r of Soc. Sec.*, 470 Fed. App'x 868, 870 (11th Cir. 2012).   Furthermore, a determination that a claimant's impairments do not meet or equal a Listing may be implied from an ALJ's decision. *Hutchison*, 787 F.2d at 1463; *Johnson*, 148 Fed. App'x at 842; *Keane*, 205 Fed. App'x at 750; *Gray ex rel. Whymms*, 454 Fed. App'x at 750; *Kalishek*, 470 Fed. App'x at 870.

Steele argues against any implicit finding at step three of the sequential evaluation on the grounds a court cannot review an implicit finding without more particular findings as to how a claimant's impairment relates to the Listings.  (Doc. 12 at 15).  The substance of her argument tracks the reasoning of Judge Clark's dissent in *Hutchison*.  *See* 787 F.2d at 1466-68.  The position for which she advocates is not the law of this circuit.  Steele further argues the only cases in which an ALJ was credited with an implicit finding at step three of the sequential evaluation are those where it was clear the ALJ was familiar with the relevant social security ruling or Listing.  (Doc. 12 at 16).  Steele cites no authority for this argument.  Regardless, here, it is clear that the ALJ considered the relevant law and evidence.  Finally, Steele relies on *Todd v. Heckler*, 736 F.2d 641 (11th Cir. 1984), and *Holman v. Colvin*, 2014 WL 4458902 (N.D. Ala. Sept. 8, 2014) to support her argument the ALJ and Appeals Council committed error.  (Doc. 12 at 15-16, 18-19).  Both cases are distinguishable from the circumstances present here.  In *Todd*, the Eleventh Circuit reversed a district court's order affirming denial of SSI benefits where the ALJ failed to consider Appendix 1 in making his disability determination.  736 F.2d at 642.

Here, the ALJ did not fail to consider Appendix 1.  He explicitly determined Steele does not have an impairment or combination of impairments that meets or equals a Listing.  (Tr. at 89-90).

*Holman* addressed a disability determination where SSR 12-2p was issued after the ALJ's decision but before the Appeals Council denied review.  *See* 2014 WL 4458902, at * 4.  After concluding the regulation applied to the ALJ's decision because the claimant's appeal was before the Appeals Council for review after the effective date of the regulation, the court found that it could not determine whether the ALJ would have reached a different decision with the benefit of SSR 12-2p.  *Id.* at *4-5.  By contrast, here, SSR 12-2p became effective before the ALJ issued his decision.

The ALJ did not explicitly cite SSR 12-2p or discuss Steele's fibromyalgia at step three of the sequential evaluation.  However, he did explicitly determine Steele's fibromyalgia constituted a severe impairment, and that Steele did not have an impairment or combination of impairments that met or medically equaled a Listing.  (Tr. at 89).  Implicit in the latter determination is that Steele's fibromyalgia, alone or in combination with her other severe impairments, did not meet or equal a Listing.  Substantial evidence supports this implicit determination.

"To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement."  *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)); *see also* 20 C.F.R. § 416.925(a)-(d).[4]  "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'"  *Wilson*,

---

[4] As discussed, SSR 12-2p clarifies that fibromyalgia cannot meet a Listing because it is not a listed impairment. *See* SSR 12-2p.

284 F.3d at 1224 (citing 20 C.F.R. § 404.1526(a)); *see also* 20 C.F.R. § 416.926(a).   A claimant's impairment must meet or equal *all* of the specified medical criteria in a particular Listing for the claimant to be found disabled at step three of the sequential evaluation.   *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990).   An impairment that manifests only some of the criteria do not qualify, no matter how severe.   *Id.* at 530.   A claimant's burden of proving her impairment meets or equals a Listing is a heavy one because "the [L]istings were designed to operate as a presumption of disability that makes further inquiry unnecessary."   *Id.* at 532.

The only Listing Steele identifies as being equaled by her fibromyalgia, alone or in combination with her other severe impairments, is Listing 14.09D.   (Doc. 12 at 17-18).   That Listing provides for disability where there are:

> [r]epeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1.  Limitation of activities of daily living.
>
> 2.  Limitation in maintaining social functioning.
>
> 3.  Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, App. 1, § 14.09D.   Although Steele's medical records note a diagnosis or reported history of fibromyalgia, they do not contain findings that her fibromyalgia is at least equal in severity to the criteria of Listing 14.09D.   (*See* Tr. at 323, 397, 399, 430, 437-38, 441-42, 642-43, 646, 648, 738, 740, 742).   In fact, a record of a visit Steele made to the office of her primary care physician, Dr. Henry Beeler, in May of 2012 noted that while Steele experienced constant pain as a result of her fibromyalgia, pain medication helped.   (*Id.* at 662).

Steele claims Dr. Beeler found her impairments prevented her from performing even unskilled, sedentary work.   (Doc. 12 at 18).   The finding to which she refers is the synthesis of a

physical RFC questionnaire signed by Dr. Beeler and a certified registered nurse practitioner ("CRNP").   (Tr. at 690-94).   Above her signature, the CRNP noted the questions regarding Steele's physical capacity (e.g., to what degree she could tolerate work stress, how long she could sit at one time, how many days per moth she was likely to be absent from work on account of her impairments) were answered per Steele's report because Dr. Beeler's office could not test those things.  (*Id.* at 694).   Beneath his signature, Dr. Beeler noted Steele provided the answers to the questions because his office had no way to make the measurements requested.   (*Id.*).   The ALJ gave little weight to Dr. Beeler's opinion because it was inconsistent with the objective evidence and was based solely on Steele's reports, as opposed to objective evidence.   (*Id.* at 94).   Steele does not challenge the weight assigned to Dr. Beeler's opinion.   Regardless, the ALJ properly discredited the opinion.   An ALJ may disregard a treating physician's opinion if he articulates good cause for doing so.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).   "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"   *Winschel*, 631 F.3d at 1179 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (ALJ properly discounted treating physician's opinion claimant was disabled because, amongst other things, that opinion appeared to be based primarily on claimant's subjective complaints of pain).   Here, the ALJ articulated good cause for discrediting Dr. Beeler's opinion.

In sum, the ALJ properly assessed whether Steele's severe impairments, alone or in combination, meet or equal a Listing, and his determination is supported by substantial evidence. Accordingly, the Appeals Council did not err in declining to review the ALJ's decision on

account of any error at step three of the sequential evaluation.

**B. RFC Assessment**

Steele argues that her impairments limit her to sedentary work at most which, given her age when the ALJ issued his decision, requires a presumptive finding of disability under Grid Rule 201.12. (Doc. 12 at 20).[5] The Commissioner contends Steele has waived this argument by failing to cite any record evidence that supports a contrary determination. (Doc. 13 at 11-12). Whether the summary character of Steele's argument warrants waiver, substantial evidence supports the ALJ's determination Steele has the RFC to perform light work with certain limitations.

A medical record dated October 1, 2010, noted Steele's COPD was stable, and examinations, x-rays, and CT scans performed between January of 2010 and January of 2013, showed no persistent abnormalities in her lungs. (Tr. at 443, 455, 559, 561, 563, 650, 675, 687, 707, 765, 715, 744). The ALJ noted the record contained little diagnostic testing as to Steele's alleged neck, back, and hand pain. (*Id.* at 92). MRIs performed in October of 2010 revealed degenerative disc disease of the cervical and lumbar spine. (*Id.* at 566, 569). X-rays of Steele's hands taken in October of 2010 showed arthritic changes of the first carpal and metacarpal joint spaces. (*Id.* at 570-71). However, clinical examinations between January of 2010 and January of 2013 showed Steele had a full range of motion in her extremities without any motor strength

---

[5] The "Grids," also known as the Medical-Vocational Guidelines, are found at 20 C.F.R. Part 404, Subpart P, App. 2. An ALJ may use them to determine at the fifth step whether other work exists in substantial numbers in the national economy that a claimant is capable of performing. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).

> The [G]rids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."

*Id.* at 1240; *see also Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir. 1985). Grid Rule 201.12 provides that an individual between the ages of 50 and 54 with a high school education and a history of unskilled work who is limited to sedentary work is disabled. 20 C.F.R. Part 404, Subpart P, App. 2, § 201.12.

deficit and a normal gait. (*Id.* at 452, 564, 579, 591, 742, 758). A record of a clinical examination performed in October of 2010 described Steele's cervical disc degeneration as stable and noted that she had no atrophy, crepitus, or deformities of the cervical spine. (*Id.* at 558-59, 561, 564). A medical record dated December 13, 2010, noted with respect to the pain Steele reported to experience as a result of her degenerative disc disease, that Steele had had an excellent response to cervical epidural steroid injections, which resolved her cervical and arm pain. (*Id.* at 579; *see also id.* at 561). An examination performed on that same date noted Steele had no straight-leg raising. (*Id.*). In May of 2012, Dr. Beeler's CRNP noted Steele's diabetes mellitus was currently controlled and that while the pain from her fibromyalgia was constant, pain medication helped. (*Id.* at 662).

In July of 2010, after a cardiac catheterization revealed 95% stenosis of her right coronary artery, Steele underwent an angioplasty. (*Id.* at 432, 461). A stent placed in her right coronary artery reduced the stenosis to 0%. (*Id.* at 461, 480). Subsequent clinical examinations showed Steele's coronary artery disease was stable and did not reveal any heart abnormalities. (*Id.* at 559, 562-63). In July of 2012, a cardiac catheterization revealed re-stenosis of Steele's right coronary artery, as a result of which she underwent another angioplasty. (*Id.* at 704, 724-25). Steele presented with chest pain and shortness of breath in January of 2013, claiming she had not returned to "base level" after her last angioplasty. (*Id.* at 740). However, a chest x-ray showed no active disease, a clinical examination demonstrated a regular heart rate and rhythm and no murmurs, and a cardiac catheterization revealed the stent in Steele's right coronary artery to be widely patent. (*Id.* at 742, 744, 747).

Finally, the ALJ found that Steele's daily activities were inconsistent with disabling levels of pain. (*Id.* at 93). He noted that while Steele claimed she could only lift 10 pounds,

walk 100 feet, and pay attention for five minutes, the record demonstrated she was able to live independently in her own residence, care for her personal needs without assistance, prepare simple meals, do laundry and household chores without assistance, shop in stores, drive two or three times each week, attend church at least four times each month, read, watch television, go to doctors' appointments and the grocery store on a regular basis, and get along with others.  (*Id.*).  These findings are consistent with Steele's testimony.  (*Id.* at 109-10, 115-19).  The ALJ further noted Steele continued to work after the alleged onset date of her disability.  (*Id.* at 93-94).  Steele testified that she tried to work as a nurse aide for five or six weeks beginning in April of 2012.  (*Id.* at 122-23).  The ALJ found Steele's attempts to work after the alleged onset date of her disability suggest she is capable of performing greater activity than alleged.  (*Id.* at 93-94).  Finally, the ALJ noted that despite her allegation that she only had a 20% grip and could not hold a pen to write, Steele completed her disability paperwork without assistance.  (*Id.* at 93).  This appears to be true.  (*See id.* at 276-83).

Because substantial evidence supports the ALJ's determination Steele has the RFC to perform a reduced range of light work, Grid Rule 201.12 does not apply to this case.

**V.    Conclusion**

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law.   Therefore, that decision is due to be **AFFIRMED**.  A separate order will be entered.

**DONE** this 18th day of September, 2015.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE